UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL GAYDOS, | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| BANK OF AMERICA, N.A., as successor by merger to LASALLE BANK NA as trustee for WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA1 TRUST and SELECT PORTFOLIO SERVICING, INC., | * No. 1:17-cv-10246-ADB |
| Defendants. | |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

Plaintiff Michael Gaydos brings claims against Bank of America, N.A. ("BANA") as trustee to his mortgage creditor and his mortgage servicer Select Portfolio Servicing, Inc. ("SPS") (together, "Defendants")[1] for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), the Massachusetts and Federal Fair Debt Collection Practices Acts (together, the "FDCPAs"), Mass. Gen. Laws ch. 93 § 49; 15 U.S.C. §§ 1692 *et seq.*, rescission under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1635, and breach of contract. Plaintiff initially brought his claims against BANA in an adversary proceeding commenced during the pendency of his Chapter 11 bankruptcy. The claims were, however, abandoned by the bankruptcy trustee after the case was converted to a Chapter 7 bankruptcy. On March 13, 2017, this Court granted Plaintiff's motion for a withdrawal of the reference to the bankruptcy court so

---

[1] Although Plaintiff named only BANA, as successor trustee for WaMu Mortgage Pass-through Certificates Series 2007-OA1 (the "Trust"), and SPS as defendants in this action, U.S. Bank National Association has appeared in its capacity as successor to BANA as trustee for the Trust.

that he could proceed in the district court. [ECF No. 6]. On June 8, 2017, Plaintiff filed an Amended Complaint in this Court against BANA, which the Court dismissed with leave to amend on January 16, 2018. [ECF Nos. 10, 17]. On February 21, 2018, Plaintiff filed his Second Amended Complaint ("SAC"), adding SPS as a Defendant. [ECF No. 20]. Defendants now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF No. 23]. For the reasons explained herein, the motion to dismiss is <u>GRANTED</u> with prejudice.

I.  BACKGROUND

The following facts are drawn from the SAC, the well-pleaded allegations of which are taken as true for purposes of evaluating Defendant's motion to dismiss. See <u>Ruivo v. Wells Fargo Bank, N.A.</u>, 766 F.3d 87, 90 (1st Cir. 2014). Certain details are also culled from documents whose authenticity are not disputed by the parties, from official public records, and from documents sufficiently referred to in the SAC. See <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993).

On December 6, 2006, Plaintiff executed a promissory note in the principal amount of $1,214,000 and granted a mortgage on a residential property in Westwood, Massachusetts to Washington Mutual Bank, FA ("WaMu"). SAC ¶¶ 9–10; [ECF Nos. 15-1, 15-2]. During the 2008 financial crisis, WaMu was placed into receivership with the Federal Deposit Insurance Corporation ("FDIC"), and most of WaMu's assets were sold to JPMorgan Chase Bank, National Association ("Chase"). Chase assigned the mortgage to BANA as trustee for the Trust on September 23, 2010 and recorded the assignment with the Norfolk County Registry of Deeds. [ECF No. 15-3 at 2] (Chase "assigns without recourse in any event said mortgage and the note and claim secured thereby . . . ."). Chase also endorsed the note to BANA as trustee for the

Trust. [ECF No. 15-1 at 7].[2]  U.S. Bank National Association later succeeded BANA as trustee for the Trust. See [ECF No. 15-4]; In re Gaydos, No. 15-11405 (Bankr. D. Mass. Jan. 29, 2016), ECF No. 22-1 (affidavit recorded in Plymouth County Registry of Deeds on May 3, 2012, acknowledging that U.S. Bank succeeded BANA as trustee for the Trust).

Plaintiff worked as a wholesale mortgage loan representative prior to the financial crisis, but lost his job in May 2007 and began to struggle financially. SAC ¶¶ 13, 15. He claims that he "repeatedly attempted to find some way of negotiating with the mortgagee or its servicing agent," but was "frustrated at every turn in trying to find out who [was] the lawful owner" of the mortgage and note. SAC ¶ 16. The responses he received were "vague, at best, but mostly unresponsive." SAC ¶ 16. Plaintiff has not, however, identified any specific communications in which he sought to identify the owner of the mortgage prior to receiving a notice of default from BANA. See SAC ¶ 17.

On September 28, 2010, BANA sent Plaintiff a notice of default, which did not inform Plaintiff of his "right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale," as required by the Mortgage. SAC ¶¶ 17, 29. After receiving the notice of default, Plaintiff sent numerous written inquiries and "repeatedly communicated his desire to rescind the loan pursuant to the Truth in Lending Act." SAC ¶¶ 17, 22. More specifically, Plaintiff sent three Qualified

---

[2] Plaintiff has expressed skepticism about the sequence of the endorsements. The note was first endorsed in blank by Washington Mutual Bank, FA. The blank endorsement was later crossed out and initialed by the bearer of the note, who then specifically endorsed the note to BANA "as successor by merger to LasSalle Bank, NA as trustee for WAMU Mortgage Pass-Through Certificates Series 2007-OA1 Trust." The endorsements are consistent with Massachusetts law. See Mass. Gen. Laws ch. 106 § 3-205(b) ("When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.").

3

Written Requests ("QWR"), see 12 U.S.C. § 2605(e)(1)(B), to SPS and at least one letter that claimed to be a QWR to Chase, and asserts that Defendants sent inadequate responses to each.[3] SAC ¶ 17. Some of the responses had copies of the promissory note, but Plaintiff noticed inconsistencies. For example, he received a copy of the promissory note in 2012 that had an endorsement, but that endorsement did not appear on a copy of the note he received in 2013. SAC ¶¶ 18, 19. On March 16, 2015, he received a "Notice of Intent to Foreclose Mortgage and Pursue Deficiency After Foreclosure of Mortgage." SAC ¶ 23.

On April 12, 2015, Plaintiff filed a voluntary chapter 11 bankruptcy petition. In re Gaydos, No. 15−11405, ECF No. 1. On June 12, 2015, SPS notified Plaintiff that the foreclosure sale had been cancelled, SAC ¶ 17, but in January 2016, U.S. Bank, as trustee for the Trust, sought relief from the automatic stay in order to foreclose, asserting that Plaintiff had defaulted on all payments due since April 1, 2010. In re Gaydos, No. 15−11405, ECF No. 22 at 1–3. Plaintiff then brought an adversary proceeding, which became the instant action after the Court granted Plaintiff's motion to withdraw the reference to the bankruptcy court. [ECF No. 6].

## II. MOTION TO DISMISS STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most hospitable to the plaintiff's theory, and draw all reasonable inferences from those facts in favor of the plaintiff. United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). The facts alleged must be sufficient to "state a claim to relief that is plausible on its face." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Bell Atlantic Corp. v.

---

[3] Chase was Plaintiff's mortgage loan servicer from 2010 through 2013. SAC ¶ 17. Plaintiff lists a total of five letters he sent to SPS, but two of those letters are undated and are not claimed as QWRs. See SAC ¶ 17.

4

Twombly, 550 U.S. 544, 570 (2007)).  The plausibility standard invites a two-step analysis.  Id. "At the first step, the court 'must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'"  Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  "At the second step, the court must determine whether the remaining factual content allows 'a reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (citations omitted).  "[T]he combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).

## III. DISCUSSION

The Court previously dismissed Plaintiff's First Amended Complaint, [ECF No. 17], and will rely here on the reasoning explained in that order without restating it in full, except to the extent Plaintiff has amended his claims.  In addition to now bringing all four of his claims against SPS, Plaintiff has supplemented his claims against BANA with three new theories: (1) that BANA violated the FDCPAs by attempting to collect Plaintiff's mortgage debt when it did not possess the promissory note, (2) that Plaintiff's rescission attempts were effective under TILA because WaMu "was not the actual lender, but was merely a 'front' for another, undisclosed lender," and (3) that BANA breached the mortgage contract because its default notice did not comply with a provision in the mortgage requiring the lender to notify Plaintiff of his "right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale."  SAC ¶¶ 35, 36, 39, 29.[4]  The Court will address each of Plaintiff's four claims in turn.

---

[4] The SAC has formatting issues.  The paragraph following ¶ 41 is ¶ 28, and the next four paragraphs iterate upward 29, 30, 31, 32.  As such, there are two distinct paragraphs numbered 29, 30, 31, and 32.  Additionally, in some instances, Plaintiff refers simply to "defendant"

5

A.     RESPA

RESPA "requires the servicer of a federally-related mortgage loan to respond to certain borrower inquiries" that qualify as QWRs. O'Connor v. Nantucket Bank, 992 F. Supp. 2d 24, 34 (D. Mass. 2014) (citing 12 U.S.C. § 2605). A QWR is a written correspondence that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). RESPA defines a servicer as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(2). A servicer that receives a QWR must acknowledge receipt of the QWR within five days "excluding legal public holidays, Saturdays, and Sundays" and respond to the QWR "with a written explanation or clarification" within thirty days "excluding legal public holidays, Saturdays, and Sundays." 12 U.S.C. § 2605(e). The servicer's response must inform the borrower of any appropriate corrections to their account, state "the reasons for which the servicer believes the account of the borrower is correct" after investigating the issue, or explain why the information requested is unavailable or cannot be obtained by the servicer after investigating. 12 U.S.C. § 2605(e)(2).

To state a RESPA claim, "Plaintiffs must show '(1) that the servicer failed to comply with the statute's [qualified written request] rules; and (2) that the plaintiff incurred actual damages as a consequence of the servicer's failure.'" Brown v. CitiMortgage, Inc., No. 16-cv-11484-LTS, 2017 WL 1363305, at *4 (D. Mass. Apr. 11, 2017) (quoting Foregger v. Residential Credit Sols., Inc., No. 12-11914-FDS, 2013 WL 6388665, at *4 (D. Mass. Dec. 5, 2013)); see

---

(singular) or "defendant(s)," thereby leaving ambiguity about which defendant he is referring to. SAC ¶¶ 36, 41.

also Mantz v. Wells Fargo Bank, N.A., No. 09-12010-JLT, 2011 WL 196915, at *4 (D. Mass. Jan. 19, 2011) (holding that a plaintiff must "assert to whom the request was made, when the request was made, how the defendant failed to respond to the request, whether the statutory period for responding has elapsed, and whether the defendant meets the statutory definition of a servicer," in addition to alleging "that the breach resulted in actual damages"). In order to sufficiently plead actual damages, a plaintiff must allege a specific pecuniary loss and identify how the purported RESPA violations caused that loss. Foregger, 2013 WL 6388665, at *4; Okoye v. Bank of N.Y. Mellon, No. 10-11563-DPW, 2011 WL 3269686, at *17 (D. Mass. July 28, 2011). Alternatively, Plaintiff may plead statutory damages, which requires a "showing of a pattern or practice of noncompliance by the servicer." Afridi v. Residential Credit Sols., Inc., 189 F. Supp. 3d 193, 200 (D. Mass. 2016) (quoting Kassner v. Chase Home Fin., LLC, No. 11-10643-RWZ, 2012 WL 260392 (D. Mass. Jan. 27, 2012)); see also 12 U.S.C. § 2605(f)(1)(B).

The Court previously dismissed Plaintiff's claim against BANA because BANA did not service the mortgage or receive a QWR, and the Court could not infer that BANA was subject to RESPA's QWR provision. [ECF No. 17 at 6]; see Jones v. Bank of N.Y., No. 12-11503-RWZ, 2013 WL 3728382, at *5 (D. Mass. July 12, 2013) (bank, as trustee of a securitization trust, fell "outside the reach of this provision"); Arazi v. Saxon Mortg. Servs., Inc., No. 11-11356-RGS, 2011 WL 5519914, at *2 (D. Mass. Nov. 14, 2011) ("Saxon argues (rightly so) that as the mortgage holder, it has no obligations under RESPA."); Castaneda v. Saxon Mortg. Servs., Inc., 687 F. Supp. 2d 1191, 1199 (E.D. Cal. 2009) ("Without alleging that [defendant] is a 'loan servicer' under RESPA[,] plaintiffs cannot show that [defendant] owed any duty to respond to their QWR, and accordingly plaintiffs' RESPA claim against [defendant] must be dismissed."). Plaintiff continues to claim that BANA should be liable because SPS was BANA's agent. SAC

7

¶ 29. The RESPA claim against BANA is dismissed because, as explained by the Court's previous order, Plaintiff does not allege that BANA ever serviced his mortgage or received a QWR. [ECF No. 17 at 6–7].

With respect to Plaintiff's RESPA claim against SPS, Plaintiff's allegations fail to state a claim because he has not alleged that SPS failed to respond to a QWR or pled statutory or specific damages resulting from a violation or a pattern or practice of violations. Plaintiff claims that he sent QWRs to SPS on August 19, October 24, and November 8, 2013. Plaintiff's chronology of communication does not contain a response to his August 19 QWR from SPS, but based on the allegations in the SAC, Chase rather than SPS was responsible for servicing his loan at that time, and SPS was therefore not required to respond. See 12 U.S.C. § 2605(e), (i)(2) (requiring responses to qualified written requests sent to a "servicer," defined as "the person responsible for servicing of a loan"). Plaintiff describes the two QWRs that he sent to SPS while it was his loan servicer as "disputing everything and stating desire to rescind." SAC ¶ 17. He received a response from SPS dated November 6, 2013 and another letter on December 10, 2013, and has not provided any specific description of how these responses were deficient. SAC ¶ 17. Instead, Plaintiff claims that although "[m]any of the QWR letters" he sent "requested an accounting and information on how the amount allegedly owed was determined," he never received a "comprehensible accounting." SAC ¶ 33. Plaintiff has not, however, specified which QWRs requested an accounting and maintains that he sent QWRs to both Chase and SPS, which leaves unclear whether he requested any information from SPS that he did not receive. See 12 U.S.C. 2605(e)(1)(B)(ii) (a QWR must include "a statement of the reasons for the belief of the

borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower").

Plaintiff has therefore not alleged that SPS failed to respond to any QWR, nor has he adequately alleged a pattern of practice of noncompliance. See Brown, 2017 WL 1363305, at *4 n.2 (plaintiffs had not sufficiently alleged a pattern or practice of noncompliance considering that they had failed "to sufficiently allege that there were five or more relevant RESPA violations"); Toone v. Wells Fargo Bank, N.A., 716 F.3d 516, 523 (10th Cir. 2013) (affirming dismissal of RESPA claim because allegation of a pattern or practice based on the plaintiffs' own requests was conclusory); Copeland v. Lehman Bros. Bank, FSB, No. 09CV1774-WQH-RBB, 2011 WL 9503, at *5 (S.D. Cal. Jan. 3, 2011) (allegation that defendant had business practices that are not designed to be responsive to specific QWRs was conclusory).

Further, even if Plaintiff had sufficiently alleged a RESPA violation by SPS, his claim would fail because he has not identified any specific pecuniary loss that resulted from SPS's actions or inactions. Although Plaintiff makes a general allegation that he suffered lost wages, attorney's fees, other expenses, and emotional distress related to the fear of losing his home as a result of the RESPA violations, SAC ¶ 30, that allegation lacks the requisite specificity and fails to assert a causal connection to an identified RESPA violation. Okoye, 2011 WL 3269686, at *17 (collecting cases); see Hintz v. JPMorgan Chase Bank, N.A., 686 F.3d 505, 511 (8th Cir. 2012) (affirming dismissal where plaintiffs failed to explain causal connection between RESPA violation and alleged actual damages).

    B.    **FDCPA**

Plaintiff's FDCPA claim is based upon his allegation that the defendants may not possess the actual mortgage note as well as their decision not to respect his rescission attempts. SAC ¶¶

31–36.[5] With respect to rescission, for the reasons discussed in the Court's order dismissing the First Amended Complaint and as more fully discussed herein, Plaintiff did not send a timely notice of rescission.

As to the allegation that the Defendants did not possess the note, Massachusetts law allows a mortgagee to foreclose on a home only if it holds the mortgage and either holds the mortgage note or is acting on behalf of the note holder. Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d 1118, 1121 (Mass. 2012) (citing Mass. Gen. Laws ch. 183 § 21, ch. 244 § 14) (new interpretation of statute with prospective effect as of June 22, 2012). Plaintiff claims that Defendants violated the FDCPAs by attempting to collect on his mortgage debt even though they did not possess the "actual, original promissory note." SAC ¶¶ 34, 35. As Plaintiff acknowledges, literal possession of the note by the mortgage holder is not required; an entity may act as an agent of the note holder to collect the debt. [ECF No. 25 at 5 n.1]; Eaton 969 N.E.2d at 1129 n.20.

Here, Plaintiff has not made out a plausible claim that Defendants were not acting on behalf of the note holder when they attempted to collect the debt, including through sending the notice of intent to foreclose. Plaintiff acknowledges that he received copies of the note in the course of his correspondence with the Defendants, see SAC ¶ 18, and U.S. Bank submitted scans of both the note and mortgage with their motion to dismiss Plaintiff's First Amended Complaint. See [ECF Nos. 15-1, 15-2]. Plaintiff questions the Trust's and US Bank's "claim to be the owner

---

[5] As noted supra, the SAC also alleges that the Defendants' failed to provide a "comprehensible accounting," but Plaintiff has not specified when he requested such an accounting, and his opposition to the motion to dismiss does not contain any explanation as to how that failure amounts to a violation of the FDCPA. Additionally, the SAC lists communications that are described as "letter re interest rate change," "Letter from SPS with ARM calculations," and "verification of debt," but Plaintiff has not explained what, if anything, was improper with respect to those communications.

and/or holder of the promissory note" because, after receiving a copy of the note in 2012 with an endorsement to BANA, he received another copy of the promissory note in 2013 that did not have an endorsement. SAC ¶ 20. Plaintiff asserts that the note he received 2012, which he also received in 2015, is a "forgery." SAC ¶ 17, [ECF No. 15-1].[6] Plaintiff's assertion that Defendant does not hold the promissory note is not supported by sufficient details to allow a "reasonable inference that the defendant is liable for the misconduct alleged" given that U.S. Bank has filed a copy of the note endorsed to the trustee for the trust that matches the note Plaintiff received in 2012. A.G. ex rel. Maddox, 732 F.3d at 80 (quoting Morales-Cruz, 676 F.3d at 224); cf. Mason v. Wells Fargo Bank, N.A., No. 14-CV-77-JL, 2014 WL 2737601, at *4 (D.N.H. Jun. 17, 2014) (dismissing wrongful foreclosure claim because plaintiffs' allegation that defendant had not produced the note failed to raise more than a sheer possibility that defendant did not possess the note); Worrall v. Fed. Nat'l Mortg. Ass'n, No. 13-CV-330-JD, 2013 WL 6095119, at *4 (D.N.H. Nov. 20, 2013) ("Speculation is insufficient to cast doubt on [defendant's] authority to enforce the note.").

Additionally, Plaintiff's FDCPA claim against SPS is time-barred because he did not bring an action to enforce SPS's alleged liability within a year of the violation. See 15 U.S.C. § 1692k(d) (requiring an action to enforce any liability created by the FDCPA to be brought "within one year from the date on which the violation occurs"); Brown v. Bank of America, N.A., 67 F. Supp. 3d 508, 518 (D. Mass. 2014) ("The FDCPA contains an explicit one-year

---

[6] According to Plaintiff's chronology, he first asserted that the note was a forgery in correspondence to Chase on February 2, 2012. Crediting Plaintiff's more recent assertion that he received a note without an endorsement in 2013 and that his receipt of that note is the reason for his "doubts about the defendant's claim to be the owner and/or holder of the promissory note," it is unclear what Plaintiff's basis was for alleging forgery in 2012, and Plaintiff's basis for his current allegation of forgery remains unclear. See [ECF No. 20 ¶¶ 17, 19–20].

11

statute of limitations."). The most recent communication that could even arguably be considered an attempt to collect debt was received by Plaintiff on December 24, 2014.[7] Thus, the statute of limitations expired no later than December 25, 2015. Plaintiff first brought an action to enforce liability against BANA in bankruptcy court on February 29, 2016 but did not claim that SPS was liable for any debt until February 21, 2018, the date the Second Amended Complaint was filed. Therefore, the FDCPA claim is untimely.

### C. Rescission

Plaintiff brings a claims for rescission under the Truth in Lending Act ("TILA"), which provides that a consumer "may exercise the right to rescind any extension of credit carrying a security interest over his principal dwelling 'until midnight of the third business day' after the extension of credit, after receiving notice of the right to rescind, or after receiving all material disclosures." Sheedy v. Deutsche Bank Nat'l Trust Co. (In re Sheedy), 801 F.3d 12, 19−20 (1st Cir. 2015) (quoting 12 C.F.R. § 226.15(a)(3)). When these disclosures are not delivered, "the right to rescind shall expire 3 years after the occurrence giving rise to the right of rescission, or upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first." Id. at 20; see 15 U.S.C. § 1635(f) (right of rescission expires at most "three years after the date of consummation of the transaction").

The SAC does not allege that the required disclosures were not made or were deficient. See Kassner, 2012 WL 260392, at *5 (granting motion to dismiss TILA claims where plaintiff failed "to establish any deficiency in the disclosures provided with the [] mortgage"). The limitations period commences with the "consummation of the [transaction]," which occurs when the borrower "'becomes contractually obligated on a credit transaction.'" Fannon v. U.S. Bank,

---

[7] SPS sent a notice of an interest rate change and an adjustable rate mortgage calculation. SAC ¶ 17.

N.A., No. 16-CV-141-JD, 2016 WL 5108036, at *3 (D.N.H. Sept. 20, 2016) (quoting 12 C.F.R. § 226.2(a)(13)). Even assuming, *arguendo*, that the three-year statute of limitations applies, Plaintiff's claim is untimely. Plaintiff closed on his mortgage loan on December 8, 2006 and first attempted to rescind the loan on May 13, 2011. As the Court noted in dismissing Plaintiff's First Amended Complaint, see [ECF No. 17], even if the required TILA disclosures were not delivered to Plaintiff at the closing, the three-year statutory period expired 18 months before Plaintiffs first notice of rescission.

Plaintiff amended his First Amended Complaint with the allegation that "WaMu was not the actual lender, but was merely a 'front' for another, undisclosed lender." SAC ¶ 39. Plaintiff alleges that the loan was therefore never consummated because the actual lender was not disclosed. Given that a $1,214,000 refinancing occurred, that Plaintiff remained in possession of the land and residence, and that a facially valid mortgage and promissory note signed by Plaintiff and identifying Washington Mutual Bank, FA as the lender have been filed with the Court, Plaintiff's assertion that the loan was never consummated is unavailing. Plaintiff has therefore failed to state a claim for rescission against either BANA or SPS.

### D.    Breach of Contract

A breach of contract claims requires (1) a valid and binding agreement; (2) breach of that agreement; and (3) damages caused by the breach. Michelson v. Dig. Fin. Servs., 167 F.3d 715, 720 (1st Cir. 1999). A promise to act in good faith is implied in every Massachusetts contract. Harrison v. NetCentric Corp., 744 N.E.2d 622, 629 (Mass. 2001). "The concept of good faith 'is shaped by the nature of the contractual relationship from which the implied covenant derives,' and the 'scope of the covenant is only as broad as the contract that governs the particular relationship.'" Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 238 (1st Cir. 2013) (quoting Ayash v. Dana–Farber Cancer Inst., 822 N.E.2d 667, 684 (Mass. 2005)). The implied covenant

13

cannot create duties that are not provided for in the contractual relationship and is instead focused on the manner of performance. Id.

Other than Plaintiff's unsubstantiated contentions that the note is a forgery and that the mortgage loan was never consummated, there is no real dispute that the mortgage and note are parts of a valid and binding agreement. See SAC ¶¶ 17, 39. Plaintiff alleges that BANA breached the agreement by failing to comply with Paragraph 22 of the mortgage. SAC ¶ 29. Paragraph 22 obligates the lender to "give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in" the mortgage and "specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by [the mortgage] and sale of the Property." [ECF No. 15-2 at 14]. The notice must also "inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." Id. Plaintiff claims that the Defendants failed to comply with this requirement.

In Massachusetts, both statute and common law require "strict compliance" with "the provisions [of the mortgage] relating to the foreclosure sale itself, but also [any] provisions requiring and prescribing the preforeclosure notice of default." Pinti v. Emigrant Mortg. Co., 33 N.E.3d 1213, 1221 (Mass. 2015) (prospective effect only as of July 17, 2015). In Pinti, the Supreme Judicial Court held a deficient notice of default rendered the subsequent foreclosure sale void. Id. at 1226. Because the SJC gave Pinti "prospective effect only;" it applies only "to mortgage foreclosure sales of properties that are the subject of a mortgage containing paragraph

14

22 or its equivalent and for which the notice of default required by paragraph 22 is sent after" July 17, 2015. Id. at 1227.

Here, Plaintiff acknowledges that he received a notice of default on September 28, 2010 and a notice of intent to foreclose on March 16, 2015. SAC ¶ 17. Even if Pinti applied to this case, Plaintiff cannot make out a viable breach of contract claim because he has not suffered harm as a result of the breach. See Michelson, 167 F.3d at 720 (requiring damages resulting from the breach). Where Plaintiff knew of his right to file a lawsuit prior to foreclosure, and in fact filed this lawsuit, he cannot show that he was harmed by not being notified of his right to sue. Plaintiff's claim that BANA breached the mortgage agreement and violated the covenant of good faith and fair dealing is therefore premised on a breach that did not result in damages.

Plaintiff's breach of contract claim against SPS fails for the same reasons discussed above with respect to BANA. Additionally, SPS is not a party to the mortgage, was not the servicer of Plaintiff's mortgage loan at the time of the allegedly deficient notice of default, and is not the entity alleged to have served notice of intent to foreclose without serving a proper notice of default. For those reasons, in addition to a lack of damages caused by an alleged breach, Plaintiff has failed to plead a valid agreement with SPS or to explain how it was breached.

## IV. CONCLUSION

Accordingly, the Second Amended Complaint is dismissed without leave to amend.

**SO ORDERED.**

January 30, 2019
/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE